Dear Representative Proffer:
This opinion is issued in response to your request which asks:
 Does Section 22(a) of Article X of the Missouri Constitution permit increases in property taxes, without voter approval, equal to the growth of the general price level even if that growth is larger than the natural growth permitted by section 137.073, RSMo, before approval of the voters is required?
The question which you pose highlights the differences in the methods by which the rates of levy are reduced in Article X, Section 22(a), Missouri Constitution, and Section 137.073, RSMo Supp. 1982.
Article X, Section 22(a), adopted November 4, 1980, provides in relevant part:
 If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
Section 137.073, as amended by the General Assembly in 1979, provides in relevant part:
 1. As used in this section, the following terms mean:
* * *
 (2) "Preceding valuation factor", a percentage increase or decrease based on the average of the annual percentage changes in total assessed valuation of a political subdivision over the previous three or five years, whichever is greater . . . .
* * *
 2. Whenever changes in assessed valuation that result from a general reassessment of real property within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis City shall notify each political subdivision wholly or partially within the county of the change in valuation, and each political subdivision wholly or partially within the county, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property substantially the same amount of tax revenue as was produced in the previous year and, in addition thereto, a percentage of the previous year's revenues equal to the preceding valuation factor of the political subdivision.
 3. Whenever the assessed valuation of real or real and personal property combined within a political subdivision or taxing authority has increased by ten percent or more over the prior year's valuation by action other than a general reassessment, the political subdivision or taxing authority shall immediately revise and lower the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property substantially the same amount of tax revenue as set forth in estimates filed by school districts for the current year as required by section 164.011, RSMo, or as estimated in the annual budget for the fiscal year adopted in accordance with chapters 50 and 67, RSMo, by political subdivisions other than school districts. The lower rate of levy as determined by the taxing authority, or when a court has determined the tax rate reduction, shall then be recertified to the county clerk.
A comparison of the material provisions of the above-cited authorities indicates that the constitutional provision mandates a reduction in the rates of levy if the assessed value of property, as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year[1]. Once this occurs, the actual levy reduction is effectuated by reducing the maximum authorized current levy to yield the same gross revenue as generated by the prior assessed value adjusted for changes in the Consumer Price Index.
Section 137.073.2 directs a revision in the rates of levy to limit revenue to that produced before general reassessment of real property augmented through an adjustment that adds a percentage of the prior year's revenues equal to the "preceding valuation factor."
Section 137.073.3 is activated whenever the assessed valuation of property has increased by ten percent or more over the previous year's valuation by action other than general reassessment. When that happens, the political subdivision or taxing authority is required to revise and lower the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property substantially the same amount of tax revenue as set forth in certain estimates required to be made by other statutes.
The purpose of the Hancock Amendment is to limit taxes and governmental expenditures. Buchanan v. Kirkpatrick, 615 S.W.2d 6,13-14 (Mo. banc 1981). There is nothing in that amendment which indicates any intention on the part of the people to limit the authority of the legislature to enact more restrictive taxing limits, as Section 137.073 does. Unless a statute is clearly repugnant to organic law, its constitutionality must be upheld. State ex rel.State Highway Commission v. Paul, 368 S.W.2d 419 (Mo. banc 1963). Clearly, a statutory provision which places a greater restriction than is constitutionally required is not repugnant to, but is in harmony with, Article X, Section 22(a).
Further, the Hancock Amendment did not repeal Article X, Section 10(c), Missouri Constitution, which provides that the General Assembly may require that political subdivisions reduce the rate of levy of property taxes imposed by such subdivisions, "whether the rate of levy is authorized by [the] constitution or by law." A construction which renders meaningless any provisions of the Constitution should not be adopted. State exrel. Moore v. Toberman, 250 S.W.2d 701 (Mo. banc 1952).
For the foregoing reasons, we conclude that the statutory provision in question is constitutional to the extent that its operation is more restrictive than that of Article X, Section 22(a). Only where the provisions of Article X, Section 22(a) operate more restrictively than the statute would the constitutional provision prevail.
CONCLUSION
It is the opinion of this office that Section 137.073, RSMo Supp. 1982, does not violate the provisions of Article X, Section 22(a), Missouri Constitution, unless the operation of such statute is less restrictive than the operation of Article X, Section 22(a).
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] "General price level" is defined in Article X, Section 17(3), Missouri Constitution (as adopted 1980), as the Consumer Price Index for All Urban Consumers for the United States.